IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| JOSEPH A. JACKSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 09-3227 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## OPINION

RICHARD MILLS, United States District Judge:

Petitioner Joseph A. Jackson has two motions pending: A Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [d/e 1] and a Motion to Amend 28 U.S.C. § 2255 Motion or in the Alternative Motion Pursuant to 18 U.S.C. § 3582(c) [d/e 7].

Both motions are denied.

I.

A.

Between August and October 2006, Jackson sold a total of
23.7 grams of cocaine base to an undercover agent over the course
of two transactions.  *See* Presentence Investigation Report (PSR)
[d/e 10], in Case No. 06-cr-30079, ¶¶ 10, 15.  He also sold 5 grams
of cocaine and 6.6 grams of cocaine base to a confidential source.
*See id.* at ¶¶ 6-7.  When he was arrested on October 16, 2006, he
dropped a bag of 14 grams of cocaine, and an additional 249 grams
were found on his person.  *See id.* at ¶ 18.

On November 2, 2006, Jackson was charged with distributing
5 or more grams of crack cocaine.  *See* Indictment [d/e 5], in Case
No. 06-cr-30079.  On December 28, 2006, the Petitioner entered
an open plea of guilty to the one-count indictment before U.S.
District Judge Jeanne E. Scott.  *See* Minute Entry of Dec. 28, 2006,
in Case No. 06-cr-30079.

B.

In preparation for his sentencing hearing, a probation officer prepared the PSR.  *See* PSR [d/e 10], in Case No. 06-cr-30079.  In the PSR, Jackson was held accountable for 1,883.95 grams of cocaine and 30.3 grams of cocaine base.  *See id.* at ¶ 22.

The probation officer determined that, before enhancements, Jackson faced a Total Offense Level of 27.  *See id.* at ¶ 36. However, due to having at least two prior felonies for controlled substances offenses, Jackson was subjected to career offender enhancements, resulting in a Total Offense Level After Enhancements of 34.  *See id.* at ¶ 39.

The PSR set out Jackson's extensive criminal history.  *See id.* at ¶¶ 40-77.  Jackson was assessed 48 Criminal History Points by the probation officer—more than three times the Points required to be assigned Criminal History Category VI.

Jackson, who was 47 at the time of sentencing, had been convicted of the following offenses:

- Unlawful Use of a Weapon;
- Unlawful Delivery of a Controlled Substance (2 times);
- Possession of a Controlled Substance (7 times);
- Possession of Drug Paraphernalia;

- Burglary (2 times);
- Retail Theft (6 times);
- Forgery;

- Fleeing from the Police;
- Obstructing a Peace Officer;
- Obstructing Justice;
- Criminal Trespass to Land (2 times); and
- Multiple Traffic Violations.

*See id.* at ¶¶ 41-72.  The information on those convictions reflect that supervision was revoked on numerous occasions, Jackson had absconded from supervision, and he had escaped from the Illinois Department of Corrections.  *See id.*  The PSR also reflected that Jackson had many other contacts with law enforcement and the criminal justice system that did not result in conviction.  *See id.* at ¶¶ 78-99.

In the end, the probation officer calculated that the Guideline Range was 262 to 327 months.

## C.

The sentencing hearing was held on April 30, 2007.  The Court adopted the PSR with only one slight modification that did

4

not affect the sentencing range.[1]  *See* Sentencing Transcript [d/e 16], in Case No. 06-cr-30079, page 4-6.

The Government made a motion for a downward departure pursuant to U.S.S.G. § 5K1.1 on the basis of substantial assistance. *See id.* at pages 8-10.  The Government stated the following:

> And, although, you know, he gave historic information, what he could, there wasn't anything that the Government could really use from what he could tell us.
>
> But we were able to utilize information that his girlfriend – I think it's his girlfriend – did provide.  And in fact, a case was indicted in federal court because of – at least in part because of her efforts.  So we give him credit not only for the historic information that was of value, it just wasn't of use, and also for the covert and active participation of the girlfriend.

*Id.* at 8-9.  The Government recommended a sentence twenty percent below the low end of the Guideline Range: 209 months.

The Assistant Federal Public Defender (AFPD) representing Jackson argued in favor of an even lower sentence, requesting a term of 199 months.  *See id.* at 10-12.  The AFPD argued that Jackson was not

---

[1] Judge Scott determined that no Criminal History Points should have been assigned for Jackson's conviction for disregarding a stop sign.  *See* Sentencing Transcript [d/e 16], in Case No. 06-cr-30079, page 4.  This reduced Jackson's total Criminal History Points to 47.  *See id.* at 5.  This had no impact on the Guideline Range, because he was a career offender, and because it is still more than three times the number needed to be assigned Category VI.

being held accountable for a tremendous amount of drugs, that he was a middle-aged man, that the career offender enhancements were not designed for an individual like Jackson, and that the crack/powder disparity resulted in sentencing inequities. *See id.* at 6, 10-12.

Jackson stated the following in his allocution:

> I don't really know how to explain it, but most of my life I been a drug abuser. And the little time or the things I did recently was just, I don't know, I guess you could that say I was trying to get retribution for all the times I had abused drugs over 30 years.
>
> And I know that it was wrong and I know that I could have done something else, you know, to support my family and to help my family out. And I just ask that the Court be lenient and assist me in some way, because I am up in age and I don't understand, you know, how something that I did 22 years ago that I paid my time for, it doubles my time again, you know.
>
> I didn't know all the laws or crack cocaine against powder cocaine. And – I mean if I really had just stop and took a look at it I don't think I would have sold drugs and I don't think I would have used drugs no more. But I didn't, I made the mistake, and I ask the Court for leniency. . . .

*Id.* at 12-13.

Judge Scott stated the following upon imposing sentence:

> Well, I've reviewed the Pre-Sentence Report and file and certainly considered the evidence of counsel and your statement as well.

There's a mix here, as the [Government] noted, of good and bad.  Once you were caught in this case you did agree to cooperate, which is a benefit that you'll receive here today.  And the fact that your girlfriend was able to give even more information is of benefit, is going to benefit you as well.

I'm going to allow the motion for what we use[d] to call a downward departure that the Government made.

In terms of the argument that I should give a sentence reduction greater than the Government recommended, here's the problem with that as I see it.

Yes, you may have had a 30 year problem with drugs, but you've got a 30 year problem with committing criminal actions.  I don't recall ever seeing a Criminal History any worse than the one you've got.  And that's a fairly significant statement.

I'm sorry if you have struggled with drugs, but chances to address them have come.  Remarkably, as I recall the Pre-Sentence, you did well in all the drug programs, isn't that right?  Passed them all.  And then went right back out and did drugs.

So you're good at getting through the programs but you haven't been good in committing to change.  And the history that we all make follows us.  And the reason it comes back to haunt you now is that it's so bad that Congress has directed that we bump your sentencing up when you're a career offender.

Even if we disregard all of that, the number of Criminal History points that you have is over three times the number that are even charted.  [Your attorney] says, well, if we treated this more like powder cocaine your guideline would be lower.  All right.  But if we extended the Criminal History points for somebody like you, you'd be looking at a Criminal History Category of at least 20, and it stops at VI.

So, you've created quite a mess for yourself.  I'm sorry that you have.  But I think the Government's recommendation is

generous under all of the circumstances and appropriate, and I'm going to accept that. I've weighed all the statutory factors, but the fact that you've been given help with drug programs, you slide right through those programs and then return to drugs repeatedly. You have the worst Criminal History I've ever seen. All of those things argue against further reduction in my judgment.

So it's the order of the Court that you serve a term in the Bureau of Prisons of 209 months.

*Id.* at 13-15.

At the conclusion of the sentencing hearing, Judge Scott engaged in the following colloquy with Jackson:

| [THE COURT]: | Those are the terms of your sentence. Do you understand them? |
| --- | --- |
| MR. JACKSON: | Yes. |
| THE COURT: | You do have the right to appeal from your conviction and sentence to a higher court. |
| | If you wish to appeal you must file a notice of appeal with the Clerk of the Court on the first floor of this building within ten days. Or you can request it of me and I will direct the Clerk to file the notice for you. |
| | If you are indigent, or without money, a copy of the transcript of the court hearings held in this case would be prepared and furnished to you without charge and an attorney would be appointed to handle your appeal for you without charge to you. |

Do you understand that?

MR. JACKSON:          Yes.

*Id.* at 17-18.

Jackson was remanded to the custody of the Marshal for service of sentence, and there was no docket activity in the case for almost ten months.

## II.

On February 15, 2008, Judge Scott appointed the First Assistant Federal Public Defender (First Assistant FPD) to represent Jackson in connection with the retroactive crack amendment. *See* Text Order of February 15, 2008, in Case No. 06-cr-30079. On March 6, 2008, the First Assistant FPD filed a motion to withdraw, concluding that Jackson was ineligible for relief because he was sentenced as a career offender. *See* Motion to Withdraw [d/e 12], in Case No. 06-cr-30079.

On March 11, 2008, Judge Scott allowed the motion to withdraw and allowed Jackson to proceed pro se. *See* Opinion [d/e 13], in Case No. 06-cr-30079. Jackson failed to respond in a timely fashion, and the

9

Court concluded that he was ineligible for relief.  *See* Text Order of April 23, 2008.

On December 12, 2008, the Court received in chambers correspondence from Jackson.  It was docketed on December 15, 2008.  The letter stated the following:

> 12-8-08
>
> Honorable Jeanne Scott,
>
> My name is Joseph Jackson, case number 06-30079-001.  I was sentenced in your courtroom on April 30, 2007.  After I was sentenced I asked [the AFPD] to put in Appeal for me.  I am writing to find the status of my appeal.  I have recently started trying to understand and read about the laws I have broken and I am starting to understand them better, so I know that with new laws that have come in that I should receive some relief.  Any thing that you can assist me with, would be appreciated.
>
> > Thank You
> > Respectfully
> > Joseph Jackson . . .

Letter from Jackson [d/e 14], in Case No. 06-cr-30079.

The Court noted that it appeared that Jackson was unaware of the various filings regarding the retroactive crack amendment, and directed the Clerk of Court to send a copy of the docket sheet and the filings associated with Jackson's attempt to receive retroactive relief.  *See* Text

Order of Dec. 15, 2008, in Case No. 06-cr-30079.  The Court afforded

Jackson an additional period of time to respond regarding his eligibility

for retroactive relief.  *See id.*

A letter from Jackson was received on January 14, 2009, and was

docketed the following day.  The letter states the following:

1-12-09

Honorable Jeanne E. Scott,

Thank you for the opportunity to revise my option on the crack law.  I am not eligible to receive a reduction because I am a career offender.  But I was not writing about that, I was trying to find out about my appeal and what the hold up was about.  Thank you once again for the chance to address your court.  Something else that I would like to make you aware of is my fiancé assisted the ATF in an investigation that netted some results and since has been harassed at her job and had to quit, also my fifteen year old son has gotten into numerous fights with family members from this case and is now in trouble with the law himself.  And this all stems from the cooperations from my case.  Anything that can be done to assist me or my family would be appreciated.

Respectfully
Joseph Jackson . . .

Letter from Jackson [d/e 15], in Case No. 06-cr-30079.

The Court noted that Jackson conceded that he was ineligible for

retroactive relief due to his career offender status.  *See* Text Order of Jan.

11

15, 2009, in Case No. 06-cr-30079.  In addition, the Court stated the

following:

> Defendant Jackson also inquires as to the status of his appeal. The
> record reveals that no Notice of Appeal was filed in this case.
> Because Jackson was represented at sentencing by [the AFPD], the
> Clerk is directed to send a copy of this Order and a copy of
> Jacksons letter to the Federal Public Defenders Office and the
> Government. This case is closed.

*Id.*

### III.

On September 4, 2009, the instant action was brought under 28

U.S.C. § 2255.  *See* Motion [d/e 1].  In the Motion, Jackson states the

following regarding the timeliness of the Motion:

> The one year statute of limitation as contained in 28 U.S.C.
> 2255(1) does not bar the instant motion due to the fact that [trial]
> counsel failed to file a notice of appeal as directed by Petitioner
> within the ten day filing period.  Petitioner has just recently
> became aware of [trial] counsel[']s failure to file the notice of
> appeal as instructed by the Petitioner within the ten day filing
> period.  [This] circumstance is enough proof to fall within the
> ambits of § 2255(b)(4).  Therefore the instant motion has been
> timely filed by Petitioner.

*Id.* at 12.[2]

---

[2] The Court will use the page numbers assigned by the Case
Management/Electronic Case Filing (CM/ECF) System, rather than those listed
on the Motion.

Jackson brings one claim.  *See id.* at 14-20.  Jackson claims the following:

> Defense counsel failed to file NOTICE OF APPEAL at the conclusion of the sentencing hearing as instructed to do so by Defendant.   Moreover, Defense Counsel has also falsely led Defendant to believe that his DIRECT APPEAL was underway, having been briefed and waiting disposition by the Court of Appeals.    This has deprived the Defendant of his Sixth Amendment right to effective assistance of counsel as guaranteed by the United States Constitution, and his right to Due Process.

*Id.* at 14.

Jackson alleges that he told the AFPD at the conclusion of the sentencing hearing that he wished to appeal, and that Jackson believed that the AFPD had filed the notice of appeal.  *See id.* at 14.  Jackson alleges that the AFPD "advised [Jackson] that the direct appeal had been filed and that they were waiting on the Court of Appeals to reach a decision."  *Id.*

Jackson states that he did not receive any information from the AFPD for a period of time, and he learned that the AFPD had relocated. *See id.*  He states that he wrote to Judge Scott and the Court of Appeals to inquire regarding the status of his appeal and asking for the case number.  *See id.*

13

Jackson claims that he did not receive a reply from Judge Scott, but that he did receive a response from the pro se clerk at the Court of Appeals on December 22, 2008, stating that they were unable to find a pending appeal.[3]  *See id.* at 15.

Jackson claims that he sent a letter to the Office of the Federal Public Defender complaining that the AFPD had not filed an appeal, and had misled him regarding the filing of an appeal.[4]  *See id.*  Jackson claims

---

[3]  Jackson's letter is dated December 19, 2008, and was received by the Clerk of the Court of Appeals on December 22, 2008.  It states the following:

> To whom it may concern:
>
> Hello My name is Joseph Jackson Case number 06-cr-30079-001. I was sentenced in the United States District Court for the Central District of Illinois Springfield Division on April 30, 2007.  After my sentencing hearing I immediately instructed my Attorney . . . to file a notice of appeal to contest my [conviction] and sentence, [my attorney] said he would file a notice of appeal.  Since my instructions I have spoken to [my attorney] several times concerning my direct Appeal of my conviction and sentence.  [My attorney] stated that my direct appeal was looking great and that we should be hearing something soon from the Court of Appeals for this circuit.  Since [my attorney] has been relocated, I would like to know the status of my appeal including any case number pertinent thereto.

Motion [d/e 1], 26.  Jackson attached an undated response from a pro se clerk of the Court of Appeals, returning unfiled the correspondence and stating that they were "unable to locate a pending appeal in this court with either your case title or lower court docket number."  *Id.* at 27.

[4]  The letter allegedly sent on January 6, 2009, states the following:

> To whom it may concern:
>
> I [am] writing to find out what happened to my appeal that [the AFPD] was supposed to file for me.  I am writing here because [he] was relocated and I wrote the court of Appeals and they have nothing on my

he did not receive a response, so he sent another letter on February 17,

2009.[5]  *See id.*  Jackson claims that he, again, received no response, so he

sent a third letter on April 20, 2009.[6]  *See id.*  Jackson claims that, at the

time the Motion [d/e 1] was filed, the Federal Public Defender's Office

had not responded to any of his letters.  *See id.*

Jackson claims that on June 26, 2009, he sent a letter to the Clerk

of this Court to obtain the new address of the AFPD, who had relocated

---

case if you could please get in contact and [the AFPD] to let me know
what happening and to let me know what needs to be done about my
Appeal.

*Id.* at 28.

[5] The second letter, dated February 17, 2009, states the following:

Public Defender Office,

I sent a letter to you all, trying to get in touch with [the AFPD],
who has moved to California I believe.  In efforts to find out what happen
to the filing of my appeal, I have not heard from him, and need someone
to file my appeal or tell me what is happening with it.

*Id.* at 29.

[6] The third letter, dated April 20, 2009, states the following:

Public Defenders Office: To whom it may Concern:

This is my third time trying to reach [the AFPD] who was my
Attorney on my case number 06-CR-30079-001.  [He] told me that he
filed my appeal and was waiting to ruled on.  I wrote the court of Appeals
in December of 2008 and they told me nothing has been filed.  Can you
send [his] address so that I may try and get this taken care of.

*Id.* at 30.

to a Federal Public Defender's Office in another state.[7]  *See id.* at 16.
Jackson claims that the Clerk of Court has failed to respond to his
correspondence.  *See id.*

Jackson argued that the AFPD's alleged behavior constitutes
ineffective assistance of counsel, that he should be afforded the
opportunity to appeal anew, and that an evidentiary hearing was
warranted.  *See id.* at 16-20.

Jackson attached numerous documents to his Motion [d/e 1].  He
submitted two brief affidavits.  The first stated the following:

> At the conclusion of the sentencing hearing held in my
> criminal case on April 30, 2007, I specifically instructed my
> defense attorney . . . that I wanted to pursue my direct appeal.
> Instructing him to file notice of appeal within 10 days as the Court
> had advised.

*Id.* at 23.

The second affidavit stated the following:

---

[7]  The letter stated the following:

> Clerk of District Court
>
> My Attorney . . . from my case number 06-CR-30076-001.  Did
> not file my appeal as I told him.  He has relocated to California
> somewhere can you send me his address so that I may find out what
> happen and my appeal going along.

*Id.* at 31.

Sometime after the sentencing hearing of April 30, 2007 I had conversations with my attorney . . . whereas he advised me that my direct appeal had been filed and was pending decision in the Court of Appeals.

This led me to believe that my direct appeal had in fact been filed.

Upon discovering that [my attorney] had misled me, I made numerous attempts to contact him. All of my efforts were to no avail. I have not heard anything from [him].

All of the evidentiary exhibits submitted in support of this § 2255 Motion are true copies of the originals.

*Id.* at 24.

Jackson attached copies of correspondence between himself and Judge Scott, the Clerk of the Court of Appeals, the Clerk of the District Court, and the Federal Public Defender's Office. *See id.* at 25-31.

IV.

On September 4, 2009, Judge Scott directed the U.S. Attorney to file an answer. *See* Opinion [d/e 2].

The Government filed its Response [d/e 4] on December 21, 2009. The Government argued that the Motion [d/e 1] was untimely, and that Jackson had not been reasonably diligent in pursuing his case and that equitable tolling would not apply.

The Government also argued that Jackson's arguments regarding communication with the AFPD are implausible. The Government further argued that Jackson's arguments were inaccurate, and attached affidavits of employees of the Office of the Federal Public Defender. The Government argued that an evidentiary hearing was not required to resolve the dispute.

The AFPD declared the following:

(1) I was assigned to represent Joseph Jackson in his criminal case in Springfield, Illinois.

(2) I represented Mr. Jackson in his plea and sentencing in 06CR30079.

(3) I recall that he was sentenced on April 30, 2007 to a term of imprisonment of 209 months prison.

(4) I recall that the sentence was based on a substantial downward departure below the U.S. Sentencing Guidelines. Prior to the sentencing I discussed the possibility of an appeal with Mr. Jackson which might have merit if the sentencing judge refused to sentence below the sentencing guidelines. I explained that I did not know whether the United States was willing to agree to the downward departure, and that the best possible target was 209 months. I explained that an appeal would open up all the private details of the downward departure argument which could be uncomfortable for him. We decided on an open plea, in order to keep open the option of an appeal in the event the United States refused to agree with the downward departure. At sentencing the United States joined in the downward departure motion.

(5) I have not reviewed the transcript, but I believe that both parties agreed with the 209 months.

(6) Immediately after sentencing, I met with him at the courthouse. He asked, "Could an appeal do anything?" I answered that an appeal could not help, and could result in the downward departure being lost on re-sentencing after an appeal. I explained that the harm of an appeal would be that he would give up the option of getting a Rule 35 motion to reduce the sentence for cooperation. I explained again that he might discover some useful information to the United States and we might be able to use that to obtain a slightly lower sentence. I explained that such new information would be the only way to reopen the case. I also explained that the United States could try to file additional charges against him for charges that were not resolved by the open plea. I explained the *Anders* brief process.

(7) Mr. Jackson never instructed me to file an appeal, and after our brief discussion he responded "OK" or "Oh well."

(8) I never heard from him again.

(9) I never told him that his appeal was going well.

Affidavit of AFPD [d/e 4-1].

The legal secretary employed at the Office of the Federal Public Defender in Springfield (FPD Legal Secretary) submitted the following information in an affidavit:

1.   I am a Legal Secretary with the Federal Defender's Office in Springfield, Illinois, and have been so employed since 2001.

2.   I have reviewed Joseph Jackson's Motion to Vacate, Set Aside or Correct Sentence, as well as the letter which he has

attached as exhibits. The three letters attached, dated January 6, 2009, February 17, 2009 and April 20, 2009, purport to be letters sent to the Federal Defender's Office by Jackson advising that no appeal had been filed on his behalf and asking our office to contact [the AFPD] or to send him [the AFPD's] address and to advise him what needed to be done on his appeal.

3.    As part of duties as a Legal Secretary, I open and distribute the mail delivered to the Federal Public Defender's Office. I also maintain a log of collect calls made to the Federal Defender's Office by inmates, listing the date, time, name of inmate and institution and whether such call was accepted.

4.    I have no specific recollection of receiving any of the letters which Jackson purports to have sent to the Federal Defender's Office and none of those letters are contained in Mr. Jackson's case file.

5.    In those situations where correspondence concerning a substantive issue which needed to be addressed is received from an inmate/defendant whose federal defender is no longer with our office, it is my practice to forward that correspondence to [the First Assistant FPD], in our Peoria office. I do not recall receiving or sending those letters to [the AFPD].

6.    I have reviewed our telephone log for incoming collect inmate calls and have no listing of any call received from Joseph Jackson after April 2007 or in 2008 or 2009. Our records indicate that the last collect calls received from Mr. Jackson were on October 17 and October 19, 2006.

Affidavit of FPD Legal Secretary [d/e 4-2].

The First Assistant FPD stated the following in an affidavit

submitted by the Government:

20

1.      I am the First Assistant Federal Public Defender with the Federal Defender's Office in Springfield, Illinois, and have been so employed with that office since 2001.

2.      As part of my duties as First Assistant Federal Public Defender, I was initially assigned to all petitions filed in the Central District of Illinois court seeking a reduction in an inmate's sentence pursuant to the retroactive amendment to the crack cocaine guideline.

3.      On February 8, 2008, the office sent a letter to Mr. Joseph Jackson, setting forth the steps he needed to take in order to seek a reduction in his sentence pursuant to the retroactive amendment to the guideline.  At that time, the office had a practice and procedure whereby former clients who contacted the office by letter or telephone concerning the retroactive amendment were sent a standard letter, such as the one sent to Mr. Jackson. Although I do not have a specific recollection of him contacting the office initially, the fact that he was sent the standard letter indicates that either he, or someone on his behalf, contacted the office by telephone on or prior to February 8, 2008.  Had such contact been made by letter, a copy of such a letter would be in his case file, which it is not.

4.      On February 15, 2008, the Court appointed the Federal Public Defender's office for purposes of litigating a potential reduction in his sentence pursuant to the retroactive amendments to the Guidelines.  I was assigned to litigate the case.

5.      On February 19, 2008, I wrote to Mr. Jackson informing him of our appointment to his case and giving him information on how to contact me.

6.      On March 6, 2008, I wrote Mr. Jackson and informed him that it was my opinion that he was ineligible for a reduction in his sentence because he was sentenced as a career offender.  In that letter, I also informed him that because of my conclusion, I had filed a motion to withdraw as his counsel.  Said motion was filed on the same day.

       7.    On March 11, 2008, the court granted my motion to withdraw.

       8.    At no time during the course of my representation of Mr. Jackson did he ever mention anything about a desire to file a notice of appeal from his criminal conviction and sentence, and he at no time mentioned any request to [the AFPD], or anyone else, that he file an appeal on his behalf.

Affidavit of First Assistant FPD [d/e 4-3].

Jackson filed his Traverse [d/e 5] on January 28, 2010, arguing that there was a factual dispute, that an evidentiary hearing was necessary, and that the affidavit of the FPD Legal Secretary was unpersuasive, because she merely stated that she did not recall receiving the correspondence.

On July 12, 2010, Judge Scott entered an Opinion [d/e 6], concluding that if the AFPD had indeed neglected to file a notice of appeal as requested, the failure would constitute ineffective assistance of counsel. Judge Scott also found that an evidentiary hearing was required to resolve the dispute. However, Judge Scott's retirement was imminent when the Opinion was entered, so the case was transferred to the undersigned.

The Court appointed counsel to represent Jackson pursuant to the Criminal Justice Act (CJA), and an evidentiary hearing was set for November 2010.  *See* Text Order of July 26, 2010.

On October 25, 2010, Jackson filed his Motion to Amend 28 U.S.C. § 2255 Motion, or in the Alternative, Motion Pursuant to 18 U.S.C. § 3582(c) [d/e 7].  In the Motion, Jackson argued, through counsel, that the retroactive amendment to the crack cocaine guideline applied to defendants classified as career offenders, such as Jackson.  In support of this position, Jackson relied upon *United States v. Corner*, 598 F.3d 411 (2010).  Jackson filed a Memorandum in Support of the Motion [d/e 8].

On November 4, 2010, the Government filed a Response [d/e 9], arguing that Jackson was not eligible for relief under 18 U.S.C. § 3582©, and that any relief under *Corner* would be blocked by *Teague v. Lane*, 489 U.S. 288, 310 (1989), because Jackson was seeking the retroactive application of a procedural rule.

## V.

On November 19, 2010, the Court held the evidentiary hearing.

Jackson testified at the hearing.  However, he testified that he was blocked from bringing his legal papers from prison in Pekin, Illinois, to the Courthouse in Springfield, Illinois.

Jackson testified that following the sentencing hearing, while at the table with the AFPD, he asked about filing an appeal.  *See* Transcript [d/e 14], 8-9.  He testified that the AFPD advised against filing an appeal, but that he (Jackson) insisted that a notice of appeal be filed.  *See id.*

Jackson testified that about a week after the sentencing hearing he had telephone contact with the AFPD.  *See id.* at 10-11.  This conversation was related to the AFPD verbally authorizing federal and local law enforcement to interview Jackson at the Menard County Jail, Petersburg, Illinois, while he awaited designation and placement at a Bureau of Prisons facility.  *See id.*

Jackson testified that he had no further conversations with the AFPD, although he unsuccessfully tried to reach him by phone ten to fifteen additional times.  *See id.* at 12-13.

On cross-examination Jackson testified that the only telephonic conversation with the AFPD regarding the appeal was the one that took

place one week after the hearing.  *See id.* at 21-24.  He testified that the AFPD stated only that the notice had been filed and that the appeal was pending.  *See id.* The Government confronted Jackson over his statement in his letter to the Court of Appeals, wherein Jackson stated that the AFPD had told him telephonically that his appeal was looking great, and that they would be hearing from the Court soon.  *Id.* at 23.  The Government also confronted Jackson over a similar statement he made in his Affidavit.  *Id.* at 24.

Jackson did not explain these discrepancies between his statement, his Affidavit, and his testimony.  When asked whether he himself had written his Section 2255 Motion and attached Affidavit, Jackson admitted that someone else had "helped" him with it.

Much of the remaining testimony of Jackson, and the testimony of the AFPD, First Assistant FPD, and the FPD Legal Secretary was in line with their previous sworn statements.

The AFPD who represented Jackson testified that after the sentence was imposed, they did discuss the possibility of an appeal.  *Id.* at 44-45. The AFPD testified that Jackson inquired whether an appeal would help,

and that the AFPD recommended against taking an appeal because:  (1) Jackson was unlikely to prevail on appeal, (2) a published appellate opinion could reveal and highlight Jackson's cooperation, and (3) any appeal would diminish the likelihood of receiving a Rule 35 motion in the future should he learn useful information while incarcerated.  *Id.* at 45.  The AFPD testified that Jackson did not request that the AFPD file a notice of appeal.

During the cross-examination of the First Assistant FPD, there was some discussion regarding Jackson's eligibility for a sentence reduction under a retroactive amendment to the crack cocaine guideline.  *See id.* at 70-75.

Following the hearing, Jackson filed a Reply [d/e 13] regarding Jackson's Motion to Amend the 2255 Motion [d/e 7].

VI.

The Court will deny the Motion.

The Court was able to observe the demeanor of the witnesses at the evidentiary hearing.  The Court did not find Jackson to be a credible witness.  He appeared to be uneasy, unsure, and evasive while testifying.

In addition, his testimony was at odds with his written submissions, including sworn statements.

On the other hand, the AFPD, the First Assistant FPD, and the FPD Secretary were credible witnesses.  The AFPD had a good recollection of key aspects of the representation of Jackson and his demeanor suggested he was truthful and sincere in his testimony.  The First Assistant FPD and the FPD Secretary were credible in their explanations of office policies regarding communications with clients and in their testimony regarding communications with Jackson.

The Court concludes that Jackson DID NOT request that the AFPD file a notice of appeal following the sentencing hearing.  As a result, the Motion [d/e 1] is untimely, and must be denied.  Alternatively, the Court would deny the Motion on the merits.

The Court will deny the Motion to Amend or Correct 28 U.S.C. Section 2255 Motion or in the Alternative Motion Pursuant to 18 U.S.C. Section 3582(c) [d/e 7].  The Court concludes that this § 2255 action is not the appropriate vehicle to bring this claim.  Alternatively, the Court will decline to review the merits under 18 U.S.C. Section 3582, because

the issue is moot, as Jackson's identical claim on the merits has been

denied in his criminal case.[8]

## VII.

"The district court must issue or deny a certificate of appealability

when it enters a final order adverse to the applicant."  Rule 11(a), Rules

Governing Section 2255 Proceedings.  "A certificate of appealability may

issue . . . only if the applicant has made a substantial showing of the

denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

"A petitioner makes a substantial showing where reasonable jurists

could debate whether (or, for that matter, agree that) the petition should

have been resolved in a different manner or that the issues presented

were adequate to deserve encouragement to proceed further."  *Sandoval v.*

---

[8] On July 28, 2011, Jackson filed a pro se motion for retroactive relief in his criminal case (No. 06-cr-30079).  The case was assigned to U.S. District Judge Sue E. Myerscough, and the First Assistant FPD was appointed.  The First Assistant FPD (who by that point was the Chief Federal Public Defender) moved to withdraw, and the Court appointed alternative counsel (who was different than CJA counsel in the instant case).   Jackson's counsel in the criminal case filed a Motion for Retroactive Sentencing Relief Pursuant to 18 U.S.C. Section 3582(c) on March 5, 2012.  On April 19, 2012, Judge Myerscough issued a sealed Opinion in Jackson's criminal case denying Jackson's request for retroactive sentencing relief, because of his status as a career offender.

*United States*, 574 F.3d 847, 852 (7th Cir. 2009) (quotation marks omitted).

Reasonable jurists would not dispute that Jackson is not entitled to relief. Accordingly, the Court will not issue a certificate of appealability. If Jackson wishes to appeal this Court's ruling, he must seek a certificate of appealability from the Court of Appeals under Federal Rule of Appellate Procedure 22.

## VIII.

*Ergo*, Petitioner Joseph A. Jackson's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [d/e 1] and the Petitioner's Motion to Amend 28 U.S.C. § 2255 Motion or in the Alternative Motion Pursuant to 18 U.S.C. § 3582(c) [d/e 7] are DENIED.

The Clerk of Court is directed to notify Jackson.

CASE CLOSED.

IT IS SO ORDERED.

ENTER: August 26, 2013

FOR THE COURT:                    */s/ Richard Mills*

29

Richard Mills
United States District Judge